IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

GLORIA TURNAGE,                              )
                                             )
             Plaintiff, *pro se*,            )
                                             )
                                             )
        v.                                   )        CIVIL NO. 3:11-cv-785-DJN
                                             )
MICHAEL J. ASTRUE,                           )
        Commissioner of Social Security,     )
                                             )
        Defendant.                           )
_____)

## MEMORANDUM OPINION

Gloria Turnage ("Plaintiff") worked for over thirty years as a receptionist for the

Richmond Police Department before she retired and began to collect her pension. On May 12,

2010, Plaintiff applied for Social Security Disability ("DIB") under the Social Security Act (the

"Act") with an alleged onset date of March 1, 2008, alleging disability due to diabetes, arthritis,

high blood pressure and knee problems. Plaintiff's claim was presented to an administrative law

judge ("ALJ"), who denied Plaintiff's request for DIB benefits. The Appeals Council

subsequently denied Plaintiff's request for review on September 20, 2011.

Plaintiff now challenges the ALJ's denial of DIB benefits, complains of the cost of

medical care, asserts that her retirement will be cut in half when she reaches 65 and complains

that her doctors would not submit opinions. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s

Mem.").) Because Plaintiff proceeds *pro se*, the Court will liberally construe her motion as a

general challenge against the ALJ's decision. *Erikson v. Pardus*, 551 U.S. 89, 94 (2007) ("A

document filed *pro se* is to be liberally construed.") (citations and internal quotation marks

omitted); *Pearn v. Astrue*, No. 3:10cv427, 2011 WL 3236064, at *4 (E.D. Va. April 7, 2011) (construing a disability claimant's general challenge to the ALJ's decision as a challenge to the ALJ's step five denial of benefits). In her decision, the ALJ determined that Plaintiff was capable of performing her past relevant work as a receptionist and had the RFC to perform light work, except that Plaintiff may need to alternate sitting and standing and must avoid climbing, crouching, kneeling, crawling and tasks requiring balance. (R. at 12-14.)

Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). This matter is now before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1) on Plaintiff's motion for summary judgment (ECF No. 10) and Defendant's motion for summary judgment (ECF No. 14). The Court dispenses with oral argument, finding the written submissions adequate and that oral argument will not materially aid the decisional process.[1] For the reasons set forth herein, the Court GRANTS Defendant's motion for summary judgment (ECF No. 14). Plaintiff's motion for summary judgment (ECF No. 10) is DENIED, and the final decision of the Commissioner is AFFIRMED.

## I. MEDICAL HISTORY

Because the Court construes Plaintiff's argument as a general challenge against the ALJ's entire decision, all evidence submitted is relevant to Plaintiff's case. As a result, Plaintiff's activities of daily living ("ADL"), medical history and medical opinions of a consulting physician and two non-treating state agency physicians are summarized below.

---

[1] The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

A.      **Plaintiff's Medical Records**

In April 2007, Plaintiff underwent a total knee replacement in her left knee and arthroscopic surgery in her right knee. (R. at 173.) A month later, Plaintiff was recovering well and ready to begin outpatient physical therapy. (R. at 166.) Plaintiff also indicated that she felt ready to return to work and her treating physician recommended that she return to work in two weeks. (R. at 166.) Plaintiff returned for a check-up six months later and was doing well with both knees. (R. at 164.) She had mild swelling in her left knee and had fallen and injured her right side, but Plaintiff's treating physician expected her to fully recover from the fall. (R. at 164.)

On March 22, 2008, Plaintiff visited Noel Patel, D.P.M, because her right heel was sore and she was in pain while walking. (R. at 184.) Dr. Patel treated Plaintiff's heel. (R. at 184.) Two months later, Plaintiff returned to Dr. Patel and complained that her right heel continued to be sore and tender. (R. at 182.) Plaintiff was given a cortisone injection and advised on stretching her foot and the need for properly fitting shoes. (R. at 183.)

On April 22, 2009, Plaintiff visited the Sleep Disorders Center of Virginia ("Sleep Center") for an initial consultation, complaining of poor quality sleep. (R. at 190.) On May 7, 2009, Plaintiff completed an overnight sleep study. (R. at 192-193.) Plaintiff was diagnosed with moderate obstructive sleep apnea and periodic limb movement disorder, along with diabetes mellitus, hypertension, hyperlipidemia, overactive bladder, osteoarthritis, allergic rhinitis and acid reflux. (R. at 192.) On August 20, 2009, Plaintiff returned to the Sleep Center for another overnight study, but terminated the testing early. (R. at 197-98.) Plaintiff was diagnosed with obstructive sleep apnea and recommended to return to conduct another study. (R. at 197-98.) Plaintiff decided not to return. (R. at 202.)

3

On September 3, 2009, Plaintiff visited David C. Harrison, M.D.and complained of shortness of breath. (R. at 231.) Plaintiff's tests were at the acceptable range for a person with diabetes. (R. at 230-31.) Plaintiff was diagnosed with diabetes mellitus, hypertension and elevated cholesterol. (R. at 231.) In April 2010, Plaintiff complained of coughing and chest congestion. (R. at 218.) She was diagnosed with bronchitis. (R. at 218.) Dr. Harrison noted that Plaintiff's tests were normal for a person with diabetes, but determined that her blood pressure was elevated. (R. at 216, 218.) X-rays of Plaintiff's knees in August 2010 revealed moderate narrowing and spurring and amorphous calcific opacity and small knee joint effusion. (R. at 243-44.)

On August 23, 2010, Plaintiff told her ophthalmologist that her diabetes was under control. (R. at 272.) On October 5, 2010, Dr. Harrison noted that Plaintiff's blood pressure was still elevated, but her blood tests were acceptable for a diabetic. (R. at 267-69.)

**B.      Plaintiff's Activities of Daily Living**

When Plaintiff worked as a receptionist, her duties included working at the front desk; helping the public with their requests; writing, typing and handling small objects; lifting or carrying a maximum of less than ten pounds; walking for up to five hours, standing for up to two hours and sitting for up to three hours in an eight-hour workday; and never climbing, stooping, kneeling, crouching, crawling, reaching or handling large objects. (R. at 88-89, 93-94.) After she retired, Plaintiff worked as a medical receptionist for a sleep clinic for about one month, until she quit. (R. at 150.) Plaintiff completed a Disability Report and wrote that she stopped working "because of other reasons" including "harassment," because she "did not know medical terminology," and that she retired from the City of Richmond because "it was time for [her] to retire." (R. at 87.)

4

On June 21, 2010, Plaintiff completed a function report in which she admitted that she could run errands, use a computer at the public library, read, watch television, sweep, mop, vacuum, make the bed, wash dishes, launder her clothes, iron, clean the bathroom sink, tub and toilet once a week, take out the trash, shop, listen to the radio, drive, help and visit family and friends, pick up and babysit her nephew for four hours a day, prepare meals, care for her personal need and take medications without reminders. (R. at 103-07.) Additionally, Plaintiff admitted that she traveled alone, went outside most days, could pay bills and handle her money, socialized with others, attended church and Bible study once a week, finished what she started, walked for exercise, could walk almost a mile before needing to stop and rest, could use public transportation and followed instructions. (R. at 106-09, 142-43, 248.)

**C.     Opinion Evidence of Dr. Powell, Consulting Physician**

On August 10, 2010, Plaintiff visited Nancy Powell, M.D., for a consultation visit. (R. at 247-51.) Dr. Powell documented Plaintiff's arthroscopic surgery on her right knee and left knee replacement surgery. (R. at 247.) Plaintiff occasionally used a cane when walking long distances and occasionally used it for balance. (R. at 247-48.) Dr. Powell also documented Plaintiff's complaint of foot pain. (R. at 248.)

Dr. Powell noted that Plaintiff lived by herself, retired in March 2008, performed some housework, drove, walked and attended church. (R. at 248.) Plaintiff did not smoke, drink alcohol or use drugs. (R. at 249.) She had completed some college. (R. at 249.)

Although Plaintiff walked with a cane, Dr. Powell observed that it did not touch the floor. (R. at 249.) Plaintiff could get on and off the exam table without assistance. (R. at 249.) Dr. Powell observed Plaintiff bending while standing and seated, taking off and putting on her shoes

and picking up large pocketbooks. (R. at 249.) Dr. Powell opined that Plaintiff's mental status
was within normal limits. (R. at 249.)

Dr. Powell noted that Plaintiff's range of motion of her joints was within normal limits,
except for her left knee flexion. (R. at 250.) Plaintiff had crepitus in her right knee. (R. at 250.)
Plaintiff's motor strength was normal. (R. at 250.) She had a decreased sensation to touch on
her heels bilaterally and the toes on her left foot. (R. at 250.) Plaintiff's reflexes were 1/4. (R.
at 250.)

Dr. Powell diagnosed Plaintiff with knee and foot pain, allergies, obesity,
gastroesophageal reflux disease, noninsulin-dependent diabetes mellitus, hypertension, history of
urinary tract infection and hyperlipidemia. (R. at 251.) Dr. Powell opined that Plaintiff could
stand or walk for six hours with more frequent breaks from her knee and foot pain. (R. at 251.)
Plaintiff could sit without restrictions. (R. at 251.) Although she required a cane to walk long
distances, Dr. Powell opined that Plaintiff could walk without her cane. (R. at 251.) Plaintiff
could lift or carry twenty pounds occasionally and ten pounds frequently. (R. at 251.) Dr.
Powell opined that Plaintiff was limited with climbing, crouching, kneeling, crawling and
balancing because of knee and foot pain, but Plaintiff had no manipulative or environmental
limitations. (R. at 251.)

**D.    Opinion Evidence of Non-treating State Agency Physicians**

On August 19, 2010, Paula Nuckols, M.D., a non-treating state agency physician,
reviewed Plaintiff's claim and concluded that Plaintiff could perform jobs requiring only a light
RFC. (R. at 22-26.) Further, Dr. Nuckols opined that Plaintiff could occasionally lift or carry
twenty pounds and frequently lift or carry ten pounds. (R. at 23.) She determined that Plaintiff
could stand or work for about six hours and sit for about six hours in an eight-hour workday. (R.

at 23.) Dr. Nuckols opined further that Plaintiff could only occasionally climb, kneel, crouch or

crawl. (R. at 24.) On November 12, 2010, Ralph Hellams, M.D., another non-treating state

agency physician, reached the same conclusion as Dr. Nuckols based on Plaintiff's record. (R. at

33-37.)

## II. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on May 12, 2010, claiming disability due to diabetes,

arthritis, high blood pressure and knee problems with an alleged onset date of March 1, 2008.

(R. at 83, 63, 87-88, 150.) The Social Security Administration ("SSA") denied Plaintiff's claims

initially and on reconsideration.[2] (R. at 19-26, 28-38.) On January 10, 2011, Plaintiff waived

her right in writing to appear and testify before an ALJ. (R. at 50.) On March 31, 2011, the ALJ

issued a decision finding that Plaintiff was not under a disability, as defined by the Act. (R. at

18.) The Appeals Council subsequently denied Plaintiff's request to review the ALJ's decision

on September 20, 2011, making the ALJ's decision the final decision of the Commissioner and

subject to judicial review by this Court. (*See* R. at 1-5.)

## III. QUESTION PRESENTED

Was the Commissioner's decision supported by substantial evidence on the record and

the application of the correct legal standard?

## IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to

determining whether the Commissioner's decision was supported by substantial evidence on the

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state
government — the Disability Determination Services ("DDS"), a division of the Virginia
Department of Rehabilitative Services — under arrangement with the SSA. 20 C.F.R. pt. 404,
subpt. Q; *see also* § 404.1503. Hearings before administrative law judges and subsequent
proceedings are conducted by personnel of the federal SSA.

record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. Jan. 5, 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Id.* (citations omitted); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To determine whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citation omitted) (internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951) (internal quotation marks omitted)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. *Hancock*, 667 F.3d at 476 (citation omitted). While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and

whether the resulting decision of the Commissioner is supported by substantial evidence on the record. *See Mastro*, 270 F.3d at 176-77.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[3]  20 C.F.R. §§ 416.920(b), 404.1520(b).  If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition.  *Id.*  If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c).  To qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function.  20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends.  20 C.F.R. §§ 416.920(d), 404.1520(d).  If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a).  Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).  Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

determine whether the claimant can return to her past relevant work[4] based on an assessment of the claimant's residual functional capacity ("RFC")[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from performing her past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472 (citation omitted).

However, if the claimant cannot perform her past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Bowen*, 482 U.S. at 146 n.5). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since March 1, 2008. (R. at 11.) At step two, the ALJ determined that Plaintiff was severely impaired from residual knee pain after two knee surgeries, obesity and high blood pressure. (R. at 11-12.) At step three, the ALJ concluded that Plaintiff's maladies did not meet one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. at 12.)

Next, the ALJ determined that Plaintiff had the RFC to perform light work, except that she may need to alternate sitting and standing and must avoid climbing, crouching, kneeling, crawling and tasks requiring balance. (R. at 12.) In doing so, the ALJ noted Plaintiff's knee and foot pain. (R. at 12.) The ALJ summarized Plaintiff's ADLs, including her ability to perform household chores, cook, take care of her personal needs, use the computer, read, watch television, pay bills, shop for groceries, visit family and friends, attend church on a regular basis, drive, assist family and friends with errands and maintain her independence. (R. at 13.) The ALJ also summarized Plaintiff's complaints, including her difficulties in bending her left leg, kneeling, walking and sitting. (R. at 13.)

Continuing, the ALJ determined that while Plaintiff required a left knee replacement and arthroscopic surgery on her right knee, Plaintiff's limitations in postural movements did not rise to a level so severe as to preclude all work-related activities. (R. at 13-14.) The ALJ assigned great weight to the opinion of Dr. Powell, a consultative examiner, because "her findings were

11

consistent with the medical records" and because she gave Plaintiff "the benefit[] of the doubt."
(R. at 14.)

At step four, the ALJ assessed that Plaintiff was able to perform her past relevant work as
a receptionist. (R. at 14) The ALJ determined that Plaintiff's past duties as a receptionist —
sitting, standing, walking, lifting less than ten pounds, writing, typing and handling small objects
— were consistent with Dr. Powell's functional assessment. (R. at 14-15.) As a result, the ALJ
concluded that Plaintiff was not under a disability, as defined by the Act. (R. at 15.)

Because the Court construes Plaintiff's challenge liberally, it will analyze the ALJ's
determination of Plaintiff's RFC and ability to perform her past relevant work.

## A.    The ALJ properly weighed the medical opinion of Dr. Powell.

During the sequential analysis, when the ALJ determines whether the claimant has a
medically-determinable severe impairment or combination of impairments which would
significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ
must analyze the claimant's medical records that are provided and any medical evidence
resulting from consultative examinations or medical expert evaluation that have been ordered.
*See* 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions,
including those from the Plaintiff's treating physicians, consultative examiners or other sources
that are consistent with each other, then the ALJ makes a determination based on that evidence.
*See* 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with
each other or other evidence, the ALJ must evaluate the opinions and assign them respective
weight to properly analyze the evidence involved. 20 C.F.R. §§ 416.927(c)(2), (d).

Under the applicable regulations and case law, a treating physician's opinion must be
given controlling weight if: (1) it is well-supported by medically-acceptable clinical and

laboratory diagnostic techniques and (2) is not inconsistent with other substantial evidence in the record. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996); 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, *e.g.*, when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. *Jarrells v. Barnhart*, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005); *see also* 20 C.F.R. § 404.1527(d)(3)-(4), (e); *Mastro*, 270 F.3d at 178 (treating physician opinions may be assigned less weight when there is "persuasive contrary evidence").

If a medical opinion is not assigned controlling weight by the ALJ, then the ALJ assesses the weight of the opinion by considering: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area which an opinion is rendered; and (6) other factors brought to the Commissioner's attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006).

In her decision, the ALJ assigned great weight to the opinion of Dr. Powell, a consultative examiner, because "her findings were consistent with the medical records" and because she gave Plaintiff "the benefit[] of the doubt." (R. at 14.) Doing so was proper. Plaintiff did not offer any treating physician opinions to contradict the other medical opinions. The two non-treating state agency physicians agreed with and adopted Dr. Powell's opinion, as it

was supported by substantial evidence. More specifically, the medical evidence revealed that Plaintiff's diabetes was under control and Plaintiff was able to walk for exercise despite having had knee surgery. (R. at 106-09, 142-43, 248, 272.)

In assigning Dr. Powell's opinion great weight, the ALJ reiterated Dr. Powell's perceived limitations of Plaintiff. More specifically, Dr. Powell opined that Plaintiff could sit without restrictions, but was limited with climbing, crouching, kneeling, crawling and balancing because of knee and foot pain. (R. at 251.) The ALJ determined that Plaintiff had the RFC to perform light work, except that she may need to alternate sitting and standing and must avoid climbing, crouching, kneeling, crawling and tasks requiring balance. (R. at 12.)

Because the ALJ adopted Dr. Powell's opinion and essentially mimicked Dr. Powell's opinion of Plaintiff's limitations in the ALJ's RFC determination, the ALJ did not err when she determined Plaintiff's RFC.

**B.    The ALJ properly evaluated Plaintiff's credibility.**

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. *Craig*, 76 F.3d at 594; *see also* SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. *Craig*, 76 F.3d at 594; SSR 96-7p, at 1-3. In doing

so, the ALJ must consider all of the medical evidence in the record. *Craig*, 76 F.3d at 594-95;

SSR 96-7p, at 5 n.3; *see also* SSR 96-8p, at 13.

If the underlying impairment reasonably could be expected to produce the individual's

pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements

about the intensity and persistence of the Plaintiff's impairments and the extent to which it

affects the individual's ability to work. *Craig*, 76 F.3d at 595. The ALJ's evaluation must take

into account "all the available evidence," including a credibility finding of the claimant's

statements regarding the extent of the symptoms. The ALJ must provide specific reasons for the

weight given to the individual's statements. *Craig*, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. *See*

*Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). Although Plaintiff complained of

difficulties in bending her leg, kneeling, walking and sitting, she was able to perform a wide-

range of ADLs, including walking almost a mile a day for exercise, attending church regularly,

driving and babysitting her nephew for at least four hours a day. (R. at 106-09, 142-43, 248.)

Because of Plaintiff's own statements about her abilities, the ALJ was correct in her analysis of

Plaintiff's credibility and determination of Plaintiff's RFC to perform light work, except that

Plaintiff may need to alternate sitting and standing and must avoid climbing, crouching,

kneeling, crawling and tasks requiring balance.

**C.    The ALJ properly determined that Plaintiff could perform her past relevant work.**

At step four of the sequential analysis, the ALJ must assess the claimant's RFC and past

relevant work to determine if the claimant is able to perform the tasks of her previous

employment. 20 C.F.R. § 404.1520(a)(4)(iv). The burden is still on Plaintiff at step four to

prove that she is unable to perform her past relevant work. Plaintiff must "show an inability to

return to her previous work (*i.e.,* occupation), and not simply to her specific prior job."
*DeLoatche v. Heckler*, 715 F.2d 148, 151 (4th Cir. 1983) (citing *Jock v. Harris*, 651 F.2d 133,
135 (2d Cir. 1981)). Further, the Commissioner may rely on the general job categories of the
*Dictionary of Occupational Titles* (DOT) as presumptively descriptive of a claimant's prior work.
*Id.*

In determining whether Plaintiff could perform her past relevant work, the ALJ noted that
Plaintiff's past duties as a receptionist, which included working at the front desk; helping the
public with their requests; writing, typing and handling small objects; lifting or carrying a
maximum of less than ten pounds; walking for up to five hours, standing for up to two hours and
sitting for up to three hours in an eight-hour workday; and never climbing, stooping, kneeling,
crouching, crawling, reaching or handling large objects. (R. at 14-15, 88-89, 93-94.) Plaintiff's
description of her past relevant work matched up with the ALJ's RFC determination, mainly that
Plaintiff could perform light work, except that Plaintiff may need to alternate sitting and standing
and must avoid climbing, crouching, kneeling, crawling and tasks requiring balance. (*Compare*
R. at 88-89, 93-94 *with* R. at 14-15.) Because the ALJ did not stray from Plaintiff's own
description of the activities she previously performed, the ALJ properly concluded that Plaintiff
was capable of performing her past relevant work as a receptionist, based on the ALJ's RFC
determination.

16

## VI. CONCLUSION

For the reasons set forth herein, the Court GRANTS Defendant's motion for summary

judgment (ECF No. 14) and DENIES Plaintiff's motion for summary judgment (ECF No. 10).

The final decision of the Commissioner is hereby AFFIRMED.

/s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated:   July 11, 2012

17